**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KALPESH MAKWANA and HUGH MITCHELL,** | **CIVIL ACTION NO. 14-7096** |
| **Plaintiffs,** | **DOCUMENT ELECTRONICALLY FILED** |
| **v.** | |
| **MEDCO HEALTH SERVICES, INC.,** | **MOTION RETURN DATE:  JANUARY 5, 2015** |
| **Defendant.** | |

---

**DEFENDANT'S BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR REMAND OF PLAINTIFFS' CLAIMS**

---

**REED SMITH LLP**
*Formed in the State of Delaware*

Sherri A. Affrunti, Esq.
Valerie M. Eifert, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email:  saffrunti@reedsmith.com,
veifert@reedsmith.com

*Attorneys for Defendant*
*Medco Health Services, Inc.*

<u>**On the Brief**</u>:

*Sherri A. Affrunti, Esq. and*
*Valerie M. Eifert, Esq.*

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..........................................................................1

II.     STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ...................2

III.    LEGAL ARGUMENT.....................................................................................7

        A.    PLAINTIFFS' AMENDED COMPLAINT WAS TIMELY REMOVED TO THIS
              COURT .............................................................................................7

        B.    NEITHER PLAINTIFF MAKWANA'S INITIAL COMPLAINT NOR
              PLAINTIFFS' AMENDED COMPLAINT PROVIDED NOTICE THAT THE
              ACTION WAS REMOVABLE...................................................................8

        C.    THIS COURT HAS ORIGINAL JURISDICTION OVER THE AMENDED
              COMPLAINT AS THE SEVERANCE PLAN IS GOVERNED BY ERISA.......11

        D.    PLAINTIFFS' REQUEST FOR AN AWARD OF FEES IN CONNECTION
              WITH THEIR REMAND MOTION SHOULD BE DENIED.............................17

IV.     CONCLUSION............................................................................................18

# TABLE OF AUTHORITIES

*Page*

## Cases

Alston v. Atlantic Electric Company,
  962 F. Supp. 616 (D.N.J. 1997)................................................................. 16

Belanger v. Wyman-Gordon,
  71 F.3d 451 (1st Cir. 1995)..................................................................... 12

Bogue v. Ampex Corp.,
  976 F. 2d 1319 (9th Cir. 1992) ........................................................... 13, 15

Brennan v. Cephalon, Inc.,
  No. 04-3241, 2005 WL 2807195 (D.N.J. Oct. 25, 2005) ........................ 14

Connolly v. Aetna U.S. Healthcare, Inc.,
  286 F. Supp. 2d 391 (D.N.J. 2003) ......................................................... 17

Costa v. Verizon New Jersey, Inc.,
  936 F. Supp. 2d 455 (D.N.J. 2013)............................................... 7, 10, 18

Dalaye v. Agripac,
  39 F.3d 235 (1994) ................................................................................. 14

Darlin v. Consol. Rail,
  93 F. Supp. 2d 599 (E.D. Pa. 2000)......................................................... 13

Dist. of Columbia v. Greater Washington Bd. of Trade,
  506 U.S. 125 (1992) ............................................................................... 12

Eyal Lior v. Sit,
  913 F.Supp. 868, 878 (D.N.J. 1996) ....................................................... 17

Fort Halifax Packing Co. v. Coyne,
  482 U.S. 1 (1987) ................................................................................... 13

Gruber v. Hubbard Bert Karle Weber, Inc.,
  159 F.3d 780 (3d Cir. 1998) ................................................................... 13

Linden v. SAP Am., Inc.,
  No. 03-3125, 2004 WL 1047719 (E.D. Pa. 2004)................................... 12

Martin v. Franklin Capital Corp.,
  546 U.S. 132 (2005) ............................................................................... 18

Massachusetts v. Morash,
    490 U.S. 116 (1989) .......................................................................................... 12

Metropolitan Life Ins. Co. v. Taylor,
    481 U.S. 58 (1986) ..................................................................................... 12, 16

Middleton v. Philadelphia Elec. Co.,
    850 F. Supp. 348 (E.D. Pa. 1994) ................................................................... 13

Pane v. RCA Corp.,
    868 F.2d 631 (3d Cir. 1989) ............................................................................ 13

Patterson v. Exxon Mobil Corp.,
    262 F. Supp. 2d 453 (D.N.J. 2003) ................................................................. 17

Urbanik v. ITT Corp.,
    No. 09-00627, 2009 WL 2132434  (D. N.J. July 13, 2009) ......................... 12, 13

Valdes v. Wal-Mart Stores,
    199 F.3d 290 (5th Cir. 2000) .......................................................................... 18

Way v. Ohio Cas. Ins. Co.,
    346 F. Supp. 2d 711 (D.N.J. 2004) ............................................................. 12, 13

**Statutes**

28 U.S.C. § 1331 ............................................................................................... 11, 16

28 U.S.C. § 1367 ................................................................................................... 16

28 U.S.C. § 1441(c) ............................................................................................... 16

28 U.S.C. § 1446(b) ................................................................................................. 3

28 U.S.C. § 1446 (b)(3) ...................................................................................... 7, 10

29 U.S.C. § 1002(1) .............................................................................................. 12

29 U.S.C. §§ 1003(a) ............................................................................................ 12

29 U.S.C. § 1132(a)(1)(B) ..................................................................................... 16

29 U.S.C. § 1132(e) ............................................................................................... 16

29 U.S.C. § 1447(c) ............................................................................................... 17

Defendant Medco Health Services, Inc. (hereinafter, "Defendant", "Medco" or the "Company"), by and through its undersigned counsel, Reed Smith LLP, hereby respectfully submits this Brief in Opposition to the Motion to Remand (the "Remand Motion") filed by Plaintiffs Kalpesh Makwana ("Plaintiff Makwana") and Hugh Mitchell ("Plaintiff Mitchell") (together, "Plaintiffs").

## I.   PRELIMINARY STATEMENT

This is an action wherein Plaintiffs have asserted various claims against their former employer, Medco.  Although the matter was instituted in the Superior Court of New Jersey (the "State Action"), it was promptly and timely removed to this Court once Defendant learned, for the first time during Plaintiff Makwana's October 13, 2014 deposition, that he was basing his claims for alleged breach of contract and/or implied contract and breach of the covenant of good faith and fair dealing exclusively upon Defendant's Severance Plan and Summary Plan Description (the "Severance Plan").  Because Defendant's Severance Plan is governed by the Employee Retirement Income Security Act ("ERISA"), this Court has original federal question jurisdiction to decide this dispute.

Plaintiffs base their Remand Motion on two arguments, both of which are equally unavailing.  First, Plaintiffs incorrectly assert that Plaintiff Makwana's initial Complaint[1] provided adequate notice that Plaintiff Makwana's claims for breach of contract and/or implied contract or breach of the covenant of good faith and fair dealing concerned Defendant's ERISA-governed Severance Plan, which is wholly unfounded.  Contrary to Plaintiffs' assertions, and as more fully addressed herein, Plaintiff Makwana's initial pleading simply did not provide

---

[1]     Plaintiff Makwana filed the initial Complaint on or about August 29, 2013.  He later filed an Amended Complaint on October 16, 2013 to, *inter alia*, join his former colleague, Plaintiff Mitchell. For purposes of the instant Motion and opposition thereto, the operative factual allegations contained in the Complaint and the Amended Complaint are the same.

sufficient notice from which Defendant could have reasonably and intelligently concluded from its face the presence of federal jurisdiction under ERISA. As set forth in Defendant's Notice of Removal, and explained herein, despite numerous requests for specification, Defendant simply did not have notice of Plaintiff Makwana's ERISA-governed claim until Plaintiff Makwana first identified Defendant's ERISA-governed Severance Plan as the "contract" allegedly "breached" by Medco during his October 13, 2014 deposition.

Second, Plaintiffs contend that Defendant's Severance Plan is not governed by ERISA. However, a plain reading of Defendant's Severance Plan and applicable caselaw flies in the face of this contention. Indeed, contrary to Plaintiffs' assertions otherwise, Defendant's Severance Plan meets all the necessary requirements to constitute an ERISA-governed employee benefit plan. Thus, Plaintiffs' assertions otherwise should be dismissed out of hand.

Accordingly, for the reasons set forth in Defendant's Notice of Removal, and as further discussed herein, this Court should deny Plaintiffs' Remand Motion and request for fees and costs, and retain jurisdiction of this matter.

## II.    STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

1.      Plaintiff Makwana commenced this action on or about August 29, 2013 by filing a Complaint against his former employer, Medco. See Counsel Decl., Exhibit A (Plaintiff's initial Complaint filed in the State Action).

2.      On or about October 16, 2013, Plaintiff Makwana amended his Complaint to, inter alia, join his former co-worker, Plaintiff Mitchell. See Counsel Decl., Exhibit B (Plaintiffs' Amended Complaint filed in the State Action).

3.      Following Defendant's initial Motions to Dismiss, an Order was entered limiting Plaintiffs' claims in the State Action to the First (Equitable Estoppel), Second (Breach of

Contract), Third (Covenant of Good Faith and Fair Dealing), Fourth (CEPA), Sixth (NJLAD), Eighth (Slander) and Ninth (Intentional/Negligent Misrepresentation)[2] Counts of the Amended Complaint.  See Counsel Decl., Exhibit C (December 20, 2013 State Action Order).

4.      On or about January 2, 2014, Defendant filed an Amended Answer and Affirmative Defenses to Plaintiffs' Amended Complaint, wherein it denied all of Plaintiffs' remaining claims in the State Action.  See Counsel Decl., Exhibit D (Defendant's Amended Answer and Affirmative Defenses filed in the State Action).

5.      Although Plaintiffs did not have employment contracts with Defendant, they each broadly claimed in the Second and Third Counts of their Amended Complaint that the termination of their employment breached an "implied contract" as well as a "covenant of good faith and fair dealing" allegedly "inherent" in the "implied contract".  See Counsel Decl., Exhibit B (Plaintiffs' Amended Complaint at "Second Count (Breach of Contract)" and "Third Count (Covenant of Good Faith and Fair Dealing)).

6.      On the face of their pleading, Plaintiffs alleged the "implied contract" arose out of "guidelines and policies" established by the Company; however the Severance Plan is never mentioned or specifically identified.  Counsel Decl., Exhibit B (Plaintiffs' Amended Complaint at "Second Count (Breach of Contract)").

7.      In an effort to ascertain what "guidelines and policies" Plaintiffs believed formed the basis of the alleged "implied contract," Defendant served discovery demands requesting Plaintiffs to identify the specific basis of their alleged breach of contract and/or implied contract claims:

---

[2]      Defendant identifies the Counts as they are named on the face of Plaintiffs' Amended Complaint.  By making such identifications, Defendant does not in any way concede that there is any merit to any of the claims; in fact, Defendant wholly denies the same.

>Discovery Request No. 9:  All documents referring or in any way relating to Medco's "guidelines and policies" that Plaintiff [Makwana] alleges established 'an implied contract between the parties' as set forth in paragraph 21 of the Complaint.

>Discovery Request No. 10: All documents referring or in any way relating to the terms of the "implied contract" that Plaintiff [Makwana] alleges Medco "breached" as set forth in paragraph 22 of the Complaint.

See Counsel Decl., Exhibit E (Defendant's First Request for Production of Documents to Plaintiff Makwana (without its Exhibits) at Requests No. 9 and 10) and Exhibit F (Defendant's First Request for Production of Documents to Plaintiff Mitchell (without its Exhibits) at Requests No. 9 and 10 (referencing paragraphs 22 and 23, respectively, of the Amended Complaint)).

8.      In response to Defendant's initial Document Requests, Plaintiffs refused to specifically identify the documents which allegedly formed the basis of their breach of contract and/or implied contract claims, instead vaguely asserting that "Plaintiff relied upon his experience and standard operating procedures during his tenure at the company when similar critical issues arose and the approvals received from his superiors."  See Counsel Decl., Exhibit G ((Plaintiff Makwana's Responses to Defendant's Initial Document Requests at Responses 9 and 10) and Exhibit H (Plaintiff Mitchell's Responses to Defendant's Initial Document Requests at Responses No. 9 and 10).

9.      Due to Plaintiffs' deficient discovery responses, and after failed attempts to obtain more specific document responses to these and other requests, Defendant filed a cross-motion on or about June 16, 2014 in the State Action seeking to compel, *inter alia*, Plaintiffs to identify the documents upon which they were relying for their alleged breach of contract and/or implied contract and breach of the covenant of good faith and fair dealing claims.  See Counsel Decl., Exhibit I (Letter Brief supporting Cross-Motion, at pp. 4, 8).

10.     Ultimately, following Oral Argument on the discovery cross-motion, the Superior Court entered an Order in the State Action commanding Plaintiffs to identify which Company policies they rely upon in support of their claims for alleged breach of contract before the close of discovery.  See Counsel Decl., Exhibit J (August 18, 2014 Case Management Order at p. 3, ¶ 7).

11.     During his deposition on October 13, 2014, upon questioning relating to the "contract of employment" he claimed existed with Medco, Plaintiff Makwana – for the first time – identified Defendant's Severance Plan, governed by ERISA, as the "contract" upon which his breach of contract and/or implied contract and covenant of good faith and fair dealing claims are based:

> Q:  Going back to the document marked P-17, which is your amended complaint, at Paragraph 26, you allege that 'Plaintiff and defendant'  . . . 'were parties to a contract of employment.
>
> Can you please identify the contract of employment you claim that you had with Medco?
>
> A:  The contract of employment I'm referring to here is if the company will let us go, they will be paying us a severance package, based on our years of service with the company.
>
> Q:  Where do you have a contract of employment that guaranteed you severance if you were terminated from the company?
>
> A:  We all had – I have the document that I have produced, showing that contract.  If the company let us go, they will pay a severance.
>
> Q:  Mr. Makwana, I'm showing you what's been previously marked as P-11.   Looking at P-11, is that the document that you're claiming is a contract that guarantees you severance upon termination from Medco?
>
> A:  Yes.

See Counsel Decl., Exhibit K (Excerpted Pages of Plaintiff Makwana's October 13, 2014 Deposition Transcript at 149:2 – 149:25).   The document referred to as P-11 above is Defendant's Severance Plan, attached to the Counsel Decl. as Exhibit L.

12.   Plaintiff Makwana went on to clarify that his claim for purported breach of contract is based on Defendant's alleged failure to provide benefits under the Company's ERISA-governed Severance Plan:

> Q:  The document marked P-11 you've identified as the contract upon which you're basing your breach of contract claim . . . . How is it that you allege Medco breached the [S]everance [P]lan?
>
> A:  Because Medco did not want to pay me my severance benefits, the[y] let me go, giving a cause.
>
> Q:     They terminated your employment because you shared a password with Mr. Mitchell, correct?  That's what you were told at the time of your termination?
>
> A:     Yes.
>
> Q:     How is that explanation that you testified to as the basis for your termination a breach of the document marked P-11?
>
> A:     Referring back to Page 415 on the severance benefits, under "Circumstances in Which Severance Benefits Will Not Be Paid," it says "termination for cause."  The company used this termination for cause to deprive me of my severance benefits.
>
> Q:     How?
>
> A     If there was a termination for cause, they don't have to pay me severance, is what it says here.

See Counsel Decl., Exhibit K (Excerpted Pages of Plaintiff Makwana's October 13, 2014 Deposition Transcript at 152:20 – 153:21).

13.   In further testimony, Plaintiff Makwana maintained that the ERISA-governed Severance Plan was the only contract Defendant breached:

Q:  Any other contract that you claim the company breached?

A:  No.

See Counsel Decl., Exhibit K (Excerpted Pages of Plaintiff Makwana's October 13, 2014 Deposition Transcript at 159:4 – 159:6).

14.     Once Defendant was able to ascertain, for the first time, that Plaintiff Makwana was basing his claims for alleged breach of contract and/or implied contract and alleged breach of the covenant of good faith and fair dealing upon the ERISA-governed Severance Plan, it timely removed the State Action to this Court on November 12, 2014.  See Counsel Decl., Exhibit M.

## III.     LEGAL ARGUMENT

### A.     PLAINTIFFS' AMENDED COMPLAINT WAS TIMELY REMOVED TO THIS COURT

A notice of removal must be filed within thirty (30) days after an initial complaint has been filed when, on the face of the pleading, it can be reasonably ascertained that the case is removable.  However, where, as here, the Complaint and Amended Complaint do not, on their face, reasonably present a basis for removal, removal is governed by 28 USC § 1446(b)(3), which provides:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed **within thirty days** after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or **other paper** from which it may first be ascertained that the case is one which is or has become removable.

28 USC § 1446(b)(3).

The phrase "other paper" has been interpreted broadly by District Courts in this Circuit to include oral deposition testimony.  See, e.g.,Costa v. Verizon New Jersey, Inc., 936 F. Supp. 2d 455, 465-66 (D.N.J. 2013) (holding that the phrase "other paper" should be given "embracive

construction," and that the phrase includes "letter communications between counsel, deposition testimony, stipulations between the parties, answers to interrogatories, and transcripts."). Thus, this matter was timely removed on November 12, 2014, within thirty (30) days following Plaintiff Makwana's October 13, 2014 deposition and the time when Plaintiff Makwana articulated for the first time that his breach of contract and/or implied contract claim and his breach of the covenant of good faith and fair dealing claim arose out an alleged breach of Defendant's Severance Plan and Defendant was first able to reasonably and intelligently ascertain that the State Action was removable.

### B.   NEITHER PLAINTIFF MAKWANA'S INITIAL COMPLAINT NOR PLAINTIFFS' AMENDED COMPLAINT PROVIDED NOTICE THAT THE ACTION WAS REMOVABLE

The central argument to Plaintiffs' Remand Motion is Plaintiffs' contention that Paragraph 28 of Plaintiff Makwana's initial Complaint somehow provided sufficient "notice" to Defendant that the action was removable; however, Paragraph 28 of that pleading provides no such notice.   Read in full text, Paragraph 28 certainly does not identify a claim under the Severance Plan; rather, it states plainly that Plaintiffs "were parties to ***a contract of employment***" and, to the extent that it references "conduct" including an alleged deprivation of a "significant severance package", it avers that deprivation to have been due to a purported "failure to act in good faith in the performance ***of the contract [of employment]."***   This averment appears under the heading for the Third Count in Plaintiff's Complaint which purports to set  forth a claim of alleged violation of the implied covenant of good faith and fair dealing and reads specifically as follows:[3]

---

[3]      It should be noted that Plaintiffs' Amended Complaint is a nearly identical pleading with respect to the Second Count ("Breach of Contract") and the Third Count ("Covenant of Good Faith and Fair Dealing").  Thus, while Plaintiffs articulate their argument with respect to Plaintiff

24.     Plaintiff repeats and realleges each allegation of complaint as if set forth herein with full force and effect.

25.     Plaintiff and Defendant were parties to a contract of employment.

26.     Inherent in the contract of employment was an implied covenant of good faith and fair dealing.

27.     Defendant acted with bad motives/intentions and/or engaged in deception or evasion in the performance of contract.

28.     ___*By such conduct*___, **including but not limited to, fabricating false pretenses to terminate Mr. Makwana's employment, in order to deprive Mr. Makwana of a significant severance package,** ___*Defendant failed to act in good faith in the performance of the contract*___.

29.     At all times pertinent hereto, as a proximate result of Defendant's wrongful conduct, Plaintiff has suffered severe emotional distress, humiliation, embarrassment, loss of income, loss of benefits, and other severe financial loss.

See Plaintiff's Complaint, Exhibit A (emphasis added).

Paragraph 28 provides no basis for Defendant to reasonably and intelligently ascertain that Plaintiff Makwana was basing his alleged breach of the implied covenant of good faith and fair dealing claim upon its ERISA-governed Severance Plan, particularly when read in conjunction with the other allegations in support of the claim.  Costa, 936 F. Supp. 2d at 466 ("The thirty-day period begins to run when a defendant can *reasonably and intelligently* conclude from the pleadings the presence of federal jurisdiction.") (emphasis added).  The Third Count instead avers that Plaintiff Makwana has an individual "contract of employment" (*i.e.*, an employment agreement, offer letter, or the like) with Defendant that provided for the payment of severance. Nowhere in his initial Complaint or otherwise up to the date of his deposition did

---

Makwana's initial Complaint, the same analysis applies even when reviewing their later, jointly-filed Amended Complaint.

Plaintiff Makwana refer to the Severance Plan or provide any other information that would lead Defendant to believe that the Second and Third Counts of his Complaint are based upon Defendant's ERISA-governed Severance Plan.

In addition, significantly, Plaintiff Makwana did not identify the Severance Plan as the basis of his claims for breach of contract and/or implied contract or breach of the implied covenant of good faith and fair dealing in response to any of Defendant's discovery requests that sought this exact information.  Thus, while Plaintiff's Complaint made a passing but unintelligible reference to a "severance package", the context of the reference provides no grounds for Defendant to reasonably and intelligently infer that Plaintiff was basing his claims under those counts on Defendant's ERISA-governed Severance Plan as opposed to some "contract of employment" he claimed to exist, and neither does anything  he stated in his responses to Defendant's discovery requests where he instead vaguely references "standard operating procedures" and "policies and practices" as the premise for his claims.

Plaintiffs' reliance upon <u>Costa</u> in support of their assertion that Defendant's removal was untimely because Defendant somehow should have known from the initial Complaint that Plaintiff Makwana's claims were removable is entirely misplaced.  <u>Costa</u>, 936 F. Supp. at 455. The facts and legal holdings of <u>Costa</u> are clearly distinguishable and inapplicable to the instant case.[4]  <u>Costa</u> involved a claim under the New Jersey Conscientious Employee Protection Act ("CEPA") filed by a union employee whose former terms of employment were governed by a collective bargaining agreement, resulting in the preemption of the CEPA claim by the Labor

_____

[4]    In its removal papers, and as restated herein, Defendant relies upon <u>Costa</u> only for this Court's adopted definition of the term "other paper" as stated in 28 U.S.C. § 1446(b)(3), and for no other reason.  Plaintiffs' attempt to mischaracterize Defendant's reliance on the case in its Notice of Removal as somehow conceding that the facts in <u>Costa</u> are analogous to the facts in the instant case is not only inappropriate but wholly inaccurate.  In fact, as discussed herein, the facts of <u>Costa</u> are different and distinguishable from the instant case.

Management Relations Act ("LMRA").  In <u>Costa</u>, the court found that the employer's removal was not timely because it knew, without question, at the time it received Costa's complaint that he was a member of a bargaining unit, regardless of whether that fact was specifically alleged in the complaint.  <u>Id.</u> at 465.  Because the federal preemption was reasonably ascertainable by the employer upon its receipt of Costa's complaint, the employer's subsequent removal of the case more than thirty (30) days later was untimely.  <u>Id.</u> at 466.

The facts here are, however, undeniably distinguishable.  In the instant case, it is not reasonable to presume that Plaintiff's breach of contract, implied contract and/or breach of the covenant of good faith and fair dealing claims were based upon Defendant's ERISA-governed Severance Plan, as there are myriad other "policies and procedures" in effect in Medco's workplace that Plaintiff Makwana could have been relying upon to assert (albeit inappropriately) as a "contract" or, conceivably, he could have at some point in his tenure with the Company procured a "contract of employment" that was not maintained in his personnel records.  In <u>Costa</u>, there was no such other policy, procedure, or agreement, and all of the facts needed to determine whether the collective bargaining agreement was implicated (<i>i.e.</i> the identity of the plaintiff whom the employer could immediately confirm through its records was part of the bargaining unit) were stated on the face of Costa's complaint.  Thus, <u>Costa</u> is not factually analogous and is inapplicable to the instant case.

### C.   THIS COURT HAS ORIGINAL JURISDICTION OVER THE AMENDED COMPLAINT AS THE <u>SEVERANCE PLAN IS GOVERNED BY ERISA</u>

As stated above, Plaintiff Makwana testified for the first time during his deposition that his alleged breach of contract and/or implied contract and breach of the covenant of good faith and fair dealing claims arise under the terms of Defendant's Severance Plan.  That Severance

Plan indisputably constitutes an "employee welfare benefit plan" governed exclusively by ERISA pursuant to 29 U.S.C. §§ 1002(1) and 1003(a), and is therefore subject to the original jurisdiction of this Court. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of ERISA § 502(a) removable to federal court." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 67 (1986).

An "employee welfare benefit plan" under ERISA is defined as a:

> plan, fund or program established or maintained by an employer for the purpose of providing its participants or beneficiaries (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in § 302(c) of the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added). ERISA's definition of "employee welfare benefit plan" clearly encompasses plans (like the Severance Plan) that provide severance benefits upon termination of employment. Way v. Ohio Cas. Ins. Co., 346 F. Supp. 2d 711, 714 (D.N.J. 2004); Urbanik v. ITT Corp., No. 09-00627, 2009 WL 2132434 at *3 (D. N.J. July 13, 2009); Linden v. SAP Am., Inc., No. 03-3125, 2004 WL 1047719 (E.D. Pa. 2004) (citing Massachusetts v. Morash, 490 U.S. 116 (1989)).

A severance plan is covered by ERISA if it requires the establishment of an ongoing administrative scheme to provide benefits. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11-12 (1987). The administrative scheme of the program need not be extensive; on the contrary, the Supreme Court has described the administrative program as "minimal." Dist. of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n.2 (1992); see also Belanger v. Wyman-

Gordon, 71 F.3d 451, 454 (1st Cir. 1995) (describing Fort Halifax as holding that an ERISA plan

exists if an employer has some minimal, ongoing administrative scheme or practice).

Plaintiffs' statement that Medco's Severance Plan required no administration is

completely unfounded.  Under Third Circuit precedent, the determination of whether a benefit

plan contains the requisite administrative scheme, *and is therefore an ERISA-governed plan*,

depends upon "the amount of employment discretion involved in providing payment" and not

simple facts such as whether payments can be tendered in one lump sum  Way, 346 F. Supp. 2d

at 714;  Urbanik, 2009 WL 2132434 at *3; Darlin v. Consol. Rail, 93 F. Supp. 2d 599, 601 (E.D.

Pa. 2000); Middleton v. Philadelphia Elec. Co., 850 F. Supp. 348, 352 (E.D. Pa. 1994) (a plan

requires an administrative scheme if it requires a determination of benefit eligibility based on

subjective criteria).[5]  These cases clearly demonstrate that the Severance Plan at bar, which

requires a case by case determination of a claimant's benefit eligibility by the Plan Administrator,

including determinations of such subjective criteria as whether an employee was terminated as a

result of a "Job Elimination," "Staff Reduction," or for "Cause," easily satisfies this standard.

See Exhibit L at p. 2.

For example, in Pane v. RCA Corp., 868 F.2d 631 (3d Cir. 1989), the Third Circuit Court

of Appeals affirmed the district court's ruling that a severance plan providing benefits only to

employees terminated for reasons other than "for cause" was an ERISA plan.   Pane illustrates

that where, as here, the circumstances of each employee's termination must be analyzed in light

of subjective criteria, "an ongoing administrative system constituting an ERISA plan" exists.

---

5       Plaintiffs' citation to Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780 (3d Cir.
1998) for the proposition that the crucial factor in determining whether a ***severance*** plan is
ERISA-governed is whether the employer has expressed an intention to provide and regulate
benefits on a long term basis is plainly wrong.  Gruber dealt with a health care arrangement, not
a severance plan.  Regardless, Medco has expressed through the Severance Plan an intention to
provide severance benefits on a regular and long term basis to its employees as a whole.

-13-

See Middleton, 850 F. Supp. at 353.  Other case law similarly illustrates that where the exercise of subjective discretion is required to determine eligibility for severance benefits, a severance plan is an ERISA-covered plan. See Darlin, 93 F. Supp. 2d at 601 (plan restricted to employees terminated "without cause" required the use of subjective discretion and was therefore covered by ERISA); Bogue v. Ampex Corp., 976 F. 2d 1319, 1322 (9th Cir. 1992) (severance plan that required a determination of whether a position was "substantially equivalent" was covered by ERISA).

Plaintiffs attempt to rely upon this Court's clearly distinguishable decision in Brennan v. Cephalon, Inc., No. 04-3241, 2005 WL 2807195 (D.N.J. Oct. 25, 2005) in support of their argument that Defendant's Severance Plan is not governed by ERISA because the severance paid under the terms of the Severance Plan is a one-time lump sum payment.  In Brennan, it was the employee – not the employer – who was alleging the existence of an ERISA-governed severance plan.  Unlike here, there was no written severance plan in Brennan; rather, the employee alleged that it was the employer's "policy and practice" to pay severance to terminated employees and that he was due severance in accordance with the practice which amounted to an unwritten plan. The court found that there was no written plan and that the plaintiff had failed to plead the existence of an official or unofficial ERISA plan since Brennan's complaint contained no allegations having to do with the benefits, beneficiaries, administrator, funding, procedures, intentions of the company or involvement of the company with regard to the alleged "plan."[6] Thus the analysis in Brennan as to whether a plan "existed" was in the context of there being no actual written plan and the holding wholly inapplicable here.

---

[6]     Plaintiffs misstate the holding of this case.  They claim that this Court found the employer failed to plead sufficient facts to support a finding of the plan; however, it was the plaintiff-employee — and not the company-defendant — that failed to plead facts to support the existence of a plan.

Plaintiff also relies heavily on a case from the Ninth Circuit Court of Appeals, Dalaye v. Agripac, 39 F.3d 235 (1994), which is also inapposite.  The Dalaye case involved an action for severance which arose under an employer's employment contract with one individual — not an actual severance plan.  The court found that sending a single employee a check every month did not rise to the level of an ongoing administrative scheme.  In contrast, here, unlike in Dalaye, Medco's Severance Plan is not an employment contract with a single employee; it provides a scheme under which eligible employees receive severance benefits after, as stated above, the Plan Administrator determines an individual's eligibility based on subjective criteria.

Medco's Severance Plan in this case clearly provides enough detail concerning the intent, and on-going nature of the benefits and discretion of the Administrator under the Severance Plan requiring an administrative scheme to qualify as an ERISA-governed severance plan.  The stated purpose of the Severance Plan is "to provide severance benefits to eligible employees of Express Scripts Holding Company[7] and its subsidiaries in connection with their involuntary termination of employment due to job elimination, staff reduction or closing or sale of a Company operation."  See Exhibit L at p. 1.  The determination of whether an employee is "eligible" clearly requires the exercise of "ongoing, particularized, administrative, discretionary analysis" to make the Severance Plan an ERISA-governed plan.  Bogue, 976 F. 2d at 1323.

Further indicia of discretion, and thus an administrative scheme, are also found in the Severance Plan.  Specifically, the Severance Plan provides for a comprehensive administrative scheme under which a Plan Administrator – the top compensation and benefits executive of the Express Scripts Holding Company – has "authority to interpret and construe the terms and

---

[7]     Express Scripts Holding Company is the parent company of Medco, and the Severance Plan administered by Express Scripts Holding Company applies to employees of its subsidiaries.

provisions of the Plan" and "the discretion and authority to determine eligibility for participation in the Plan, whether a severance benefit will be awarded under the Plan, and if so, the amount of the severance, as well as any other discretionary authority described in the Plan."  See Exhibit L at p. 5.  Under the plain terms of the Severance Plan, the Administrator is responsible for determining (1) whether the employee is eligible for benefits; (2) the amount of severance benefits the employee will be offered under the Severance Plan, within the discretionary guidelines set forth in the Severance Plan; and (3) the timing of the payments of those benefits. The Plan also provides for the Administrator to afford employee outplacement services, which is a clear indicia that an administrative scheme is necessary in order to administer such benefits. See Alston v. Atlantic Electric Company, 962 F. Supp. 616, 624 (D.N.J. 1997) (finding that an administrative scheme existed and the severance plan was governed by ERISA where the plan offered healthcare benefits and outplacement training because such benefits "clearly require an ongoing management scheme for their administration").  The exercise of this subjective discretion and administration clearly establishes that the Severance Plan is governed by ERISA.

Because Medco's Severance Plan clearly qualifies as an ERISA-governed plan, Plaintiff Makwana's sole remedy against Defendant, if any, for losses suffered and benefits claimed which are premised upon his allegations that Medco somehow breached that plan arise strictly under ERISA, 29 U.S.C. § 1132(a)(1)(B), and, accordingly, any state law claim for benefits is preempted and displaced by the civil enforcement provision of ERISA, Section 502(e), 29 U.S.C. § 1132(e), Metropolitan Life, 481 U.S. at 58.  Plaintiff Makwana's ERISA claim is within the original jurisdiction of this Court pursuant to the provisions of 28 U.S.C. § 1331.  Although Plaintiffs also assert additional claims in the Amended Complaint that do not arise under federal law, those claims are removable as part of the entire case pursuant to 28 U.S.C. § 1441(c) and §

1367 because they are so related to Plaintiff Makwana's federal claim that they form a part of the same case or controversy.

Plaintiffs' attempt to defeat the jurisdiction of this Court by making the factually and legally unsupported assertion that Defendant's Severance Plan is not governed by ERISA is entirely without merit.  As set forth in detail above, Defendant's Severance Plan is an ERISA-governed plan; and the caselaw relied upon by Plaintiffs in support of their position is wholly distinguishable from the facts in the present case.

### D.   PLAINTIFFS' REQUEST FOR AN AWARD OF FEES IN CONNECTION WITH THEIR REMAND MOTION SHOULD BE DENIED

Plaintiffs' request for an award of fees in connection with the Remand Motion is wholly unjustifiable given that their arguments in support of the same ring hollow, and should be dismissed as such.  Even if it could be assumed, hypothetically, that Plaintiffs presented a viable and persuasive argument for remand (they do not), this Court should deny their request for an award of fees.

Section 1447(c) does provide a district court broad discretion over whether to require payment of costs and expenses incurred as a result of a removal.  29 U.S.C. § 1447(c).  Nevertheless, this discretion is not unlimited.  Indeed, this Court has held that where a defendant asserts a good-faith argument for removal, especially where the issues presented are close questions, an award of attorneys' fees is not warranted.  Connolly v. Aetna U.S. Healthcare, Inc., 286 F. Supp. 2d 391, 406 (D.N.J. 2003) ("On a close question, although removal turns out to have been incorrect, the Court may decline to award costs and attorneys' fees."); Patterson v. Exxon Mobil Corp., 262 F. Supp. 2d 453, 467 (D.N.J. 2003) (citing Eyal Lior v. Sit, 913 F.Supp. 868, 878 (D.N.J. 1996)).  "Absent unusual circumstances, courts may award attorney's fees

under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); see also Valdes v. Wal-Mart Stores, 199 F.3d 290, 292 (5th Cir. 2000) ("Although from time to time factual situations may arise in which the district court is required to award attorney's fees, the mere determination that removal was improper is not one of them."). In making this determination, the court "does not consider the motive of the removing defendant." Valdes, 199 F.3d at 292-93. Rather, the court must consider the objective merits of removal "at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper." Id. at 293.

As previously discussed *supra*, Medco had an objectively reasonable basis for removing this case following Plaintiff Makwana's deposition when he, for the first time, identified the Company's Severance Plan as the "contract of employment" that he is claiming has been breached. Even if, for the sake of argument, this Court determines that removal was improper, that fact alone should not, under applicable precedent, support a fee award. See Costa, 936 F. Supp. 2d at 467 (denying employee's request for attorneys' fee award, finding employer had provided an objectively reasonable basis for removal despite removal being untimely under the circumstances).

## IV.    CONCLUSION

For all of the reasons stated herein, Plaintiffs' Remand Motion is wholly without merit. There is no basis to deny Defendant its right to remove the ERISA claim for which this Court has original jurisdiction as authorized by statute, and have this Court properly adjudicate its merits. Therefore, Defendant respectfully requests that this Court deny Plaintiffs' Remand Motion and all other relief requested in Plaintiffs' Motion and retain jurisdiction of this case.

Respectfully submitted,

**REED SMITH LLP**

*|s| Sherri A. Affrunti*
Sherri A. Affrunti, Esq.
Valerie M. Eifert, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08543

*Attorneys for Defendant*
*Medco Health Services, Inc.*

Dated: December 22, 2014