## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

**KALPESH MAKWANA and
HUGH MITCHELL**

        **Plaintiffs,**

       **v.**

**MEDCO HEALTH SERVICES, INC.**

        **Defendant.**
_____

:
:
:
:
:
:
:
:
:
:
:
:
:

**Civ. No. 14-7096 (MCA)**

**REPORT AND RECOMMENDATION**

**HAMMER, United States Magistrate Judge**

### I.    INTRODUCTION

Before the Court is a motion filed by Kalpesh Makwana ("Makwana") and Hugh

Mitchell ("Mitchell") (collectively "Plaintiffs") to remand this matter to the Superior Court of

New Jersey, Law Division, Bergen County (the "Superior Court").   See Pls.' Mot. to Remand,

Dec. 8, 2014, D.E. 4-2.   The Honorable Madeline C. Arleo, United States District Judge,

referred this motion to the Undersigned for a Report and Recommendation.[1]

Pursuant to Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1, the Court

decided this motion without oral argument.   For the reasons set forth below, the Undersigned

concludes that: (i) Defendant Medco Health Services Inc. ("Medco") timely removed this matter

from the Superior Court; (ii) the Court has subject matter jurisdiction over Plaintiffs' breach of

_____

[1] The Court notes that a decision to remand is dispositive.   In re U.S. Healthcare, 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, the Court makes the following Report and Recommendation.

1

contract, and breach of implied covenant of good faith and fair dealing claims (collectively the "Contract Claims"); (iii) the Court may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims; and (iv) Plaintiffs have not articulated a basis to obtain attorney's fees.   The Undersigned therefore respectfully recommends that the District Court deny Plaintiffs' motion to remand.

## II.   BACKGROUND

### A.   PROCEDURAL HISTORY

Plaintiff Makwana worked for Defendant's Information Technology ("IT") Department for approximately thirteen years.[2]   See Compl., Aug. 29, 2013, D.E. 6-1, at Ex. A to Decl. of Sherri A. Affrunti, Esq. in Opp. to Pls.' Mot. to Remand ("Affrunti Decl."), at ¶ 1.   Defendant provides pharmacy benefit and management services.   Id. at ¶ 2.   On May 23, 2013, Defendant terminated Plaintiff Makwana for allegedly violating company policy by improperly providing confidential login information about a project to a co-worker.   See id. at ¶¶ 6-15.

The main issue here is whether Medco timely removed the Contract Claims, which it asserts are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq, and if so whether the Court may exercise jurisdiction over those claims.

On August 29, 2013, Plaintiff Makwana filed a Complaint in the Superior Court.   See id. at ¶¶ 1-50.   Approximately three weeks later, he served Defendant with the Summons and the Complaint.   See Acknowledgement of Service, at Ex. A, Sept. 18, 2013, D.E. 4-1.   In the

---

[2] Plaintiff Makwana originally sued Express Scripts, Inc. in the Superior Court of New Jersey, Law Division, Bergen County.   See Compl., Aug. 29, 2013, D.E. 6-1, at Ex. A to Decl. of Sherri A. Affrunti, Esq. in Opp. to Pls.' Mot. to Remand ("Affrunti Decl.").   Thereafter, on November 5, 2013, the parties stipulated to substitute Defendant Medco because Express Scripts was "wrongly identified and improperly named [.]"   See Cert. of Gerald Jay Resnick, Esq. in Supp. of Pls.' Mot. to Remand ("Resnick Cert."), at Ex. C, Dec. 8, 2014, D.E. 4-1.

Complaint, Plaintiff Makwana asserted the following seven claims related to his alleged improper termination: (i) equitable estoppel; (ii) breach of contract; (iii) breach of the covenant of good faith and fair dealing; (iv) violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 34:19-1-19-14; (v) violation of public policy under Pierce v. Ortho Pharma. Corp., 84 N.J. 58 (1980); (vi) violation of the New Jersey Law Against Discrimination ("NJ LAD"), N.J. Stat. Ann. §§ 10:5-27.1; and (vii) violation of the "NJ Wage Claim Act." See Compl., Aug. 29, 2013, at ¶¶ 16-50, D.E. 6-1, at Ex. A to Affrunti Decl.

The Contract Claims are the Second and Third Counts of the Complaint. See id. at ¶¶ 20-26. In the Second Count, Plaintiff Makwana alleges that Medco's "guidelines and practices" create an implied contract, and that Medco breached that implied agreement by improperly terminating him. Id. at ¶¶ 20-23. In the Third Count, Plaintiff Makwana claims that the parties executed "a contract of employment [that] . . . contained an implied covenant of good faith and fair dealing." Id. at ¶¶ 25-26. In particular, Plaintiff Makwana contends that Defendant "failed to act in good faith" under the employment contract because Defendant created "false pretenses to terminate Mr. Makwana's employment, in order to deprive Mr. Makwana of a significant severance package [.]" Id. at ¶ 29.

On October 16, 2013, Plaintiff Makwana amended his Complaint to: (i) add Plaintiff Mitchell as a party, and (ii) add claims for slander, intentional/negligent misrepresentation, and intentional infliction of emotional distress.[3] See Am. Compl., Oct. 16, 2013, D.E. 6-1, at Ex. B

---

[3] The remaining seven claims are: Count One (equitable estoppel); Count Two (breach of contract); Count Three (breach of the covenant of good faith and fair dealing); Count Four (violation CEPA); Count Six (violation of NJ LAD); Count Eight (slander); and Count Nine (intentional/negligent misrepresentation). See Order, Dec. 20, 2013, D.E. 6-1, at Ex. C to Affrunti Decl.; see also Am. Compl., Oct. 16, 2013, D.E. 6-1, at Ex. B to Affrunti Decl.

to Affrunti Decl.   Plaintiff Mitchell worked in Defendant's IT Department for approximately thirteen years.   Id. at ¶ 4.   Like Plaintiff Makwana, Plaintiff Mitchell maintains that Defendant improperly terminated him on May 23, 2013 for allegedly violating company policy by providing confidential login information about a project to a co-worker.   Id. at ¶¶ 7-16.   The Superior Court partially granted Defendant's motion to dismiss the Amended Complaint on December 20, 2013, such that only seven of Plaintiffs' ten claims, including the Contract Claims, are still at issue in this case.   See Order, Dec. 20, 2013, D.E. 6-1, at Ex. C to Affrunti Decl.

### i. REMOVAL

Defendant removed the state court matter on November 12, 2014.   See Def.'s Notice of Removal, Nov. 12, 2014, D.E. 1.   In the Removal Petition, Medco asserted that removal was timely because it first learned during Plaintiff Makwana's deposition that the Contract Claims were regulated by ERISA and therefore were federal claims.   That deposition occurred more than a year after Plaintiff Makwana filed the Complaint.   Id. at ¶¶ 6-10.   In fact, Defendant contends that throughout discovery, Plaintiffs refused to identify the specific policies or contracts that formed the basis of the Contract Claims.   See id., at ¶¶ 7-8.   The Superior Court eventually granted Defendant's motion to compel discovery, and required Plaintiffs to identify "which Company policies they rely upon in support" of their Contract Claims.   See Case Mgmt. Order, at ¶ 7, Aug. 18, 2014, D.E. 6-1, at Ex. J to Affrunti Decl.

Plaintiff Makwana's deposition occurred on October 13, 2014.   See Kalpesh Makwana Dep. Tr., Oct. 13, 2014, D.E. 6-1, at Ex. K to Affrunti Decl.   Plaintiff Makwana testified that Defendant breached the company's severance plan (the "Severance Plan"), and that the Plan was the core of the Contract Claims.   See id. at 152:20-153:10.   In pertinent part, Plaintiff Makwana testified as follows:

4

Q: Going back to the document marked P-17, which is your amended complaint, at Paragraph 26, you allege that "Plaintiff and defendant," . . . "were parties to a contract of employment."   Can you please identify the contract of employment you had with [Defendant] Medco?

A: The contract of employment I'm referring to here is if the company will let us go, they will be paying us a severance package, based on our years of service with the company.

Q: Where do you have a contract of employment that guaranteed you severance if you were terminated from the company?

A: We all had - - I have the document that I have produced, showing that contract.   If the company let us go, they will pay a severance.

. . .

Q: The document marked P-11 you've identified as the contract upon which you're basing your breach of contract claim . . . . How is it that you allege Medco breached the severance plan?

A: Because Medco did not want to pay me my severance benefits, [they] let me go, giving a cause.

Q: They terminated your employment because you shared a password with [Plaintiff] Mr. Mitchell, correct?   That's what you were told at the time of your termination?

A: Yes.

Q: How is that explanation that you testified to as the basis for your termination a breach of the document marked P-11?

. . .

A: Referring back to Page 415 on the severance benefits, under "Circumstances in Which Severance Benefits Will Not Be Paid," it says "termination for cause."   The company used this termination for cause to deprive me of my severance benefits.

Q: How?

A: If there was a termination for cause, they don't have to pay me severance, is what it says here.

5

. . .

Q: Do you have any other facts to support your claim you were otherwise eligible for severance in connection with your employment termination?

A: No.

Q: Any other contract that you claim the company breached?

A: No.

Id. at 149:2-9; 149:10-19; 152:20-153:10; 153:12-21; 158:24-159:6.

### ii.   THE SEVERANCE PLAN

Plaintiff Makwana produced a copy of the Severance Plan at his October 13, 2014, deposition.   See id. at 149:10-150:24.[4]   Four of the Plan's provisions are relevant to the Court's analysis.

First, the Plan states that it is "intended to qualify as an employee welfare benefit plan under ERISA [and that it] shall be interpreted and construed" in that manner.   Severance Plan, Aug. 3, 2012, D.E. 6-1, at 1, Ex. L to Affrunti Decl.   Indeed, the "ERISA Provisions" portion of the Plan explains protections that ERISA extends to participants, including a participant's right to receive information about the Severance Plan and its benefits.   See id. at 9-10.

Second, the Plan authorizes the "Plan Administrator," who is Defendant's "top compensation and benefits executive," both to "interpret and construe" the contract's terms.   Id. at 5.   The Plan Administrator has the "discretion and authority to determine eligibility for

---

[4] The record does not clearly indicate whether Plaintiffs produced the Severance Plan before Plaintiff Makwana's deposition.   What is clear, however, is that Plaintiffs produced the Severance Plan after August 18, 2014 because that was when the Superior Court compelled Plaintiffs to provide Defendant with documents supporting the Contract Claims.   See Case Mgmt. Order, at ¶ 7, Aug. 18, 2014, D.E. 6-1, at Ex. J to Affrunti Decl.   As set forth above, it is also apparent that Plaintiffs first disclosed the basis of the Contract Claims at Plaintiff Makwana's October 13, 2014 deposition.

participation in the Plan, whether a severance benefit will be awarded under the Plan, and if so, the amount of the severance, as well as any other discretionary authority described in the Plan." Id.  Employees who believe that they were improperly denied benefits under the Plan may file a written claim with Defendant, and if necessary, file an appeal with Defendant's "Health & Welfare Committee."   Id. at 5-6.

Third, the Plan Administrator approves severance benefits only if a former employee "is terminated due to job elimination, staff reduction, or closing or sale of a Company operation on or after April 3, 2012."  Id. at 1.   Employees terminated for cause or "for any reason other than job elimination, staff reduction, or closing or sale of a Company operation" cannot receive severance benefits.  Id. at 2.

Last, the Plan identifies both the types of severance benefits offered, and when such benefits are issued.  See id. at 4-5.   For example, the Plan includes "outplacement assistance" as a benefit.  Id. at 4.   In addition, employees in "Grade H and above" may, at the Plan Administrator's discretion, receive "2 Weeks of base pay per year of service" for a minimum of eight weeks, and a maximum of twenty weeks.  Id.   And, even though the Plan Administrator can authorize severance payments to be made "over time," all benefits under the Plan "shall be paid in full by the end of the employee's second taxable year following the year of termination." Id. at 3.

### iii.  REMAND

#### 1.  PLAINTIFFS' MOTION TO REMAND

Plaintiffs seek to remand this action for two reasons.   First, Plaintiffs contend that Defendant's removal application is untimely.   See Pls.' Mot. to Remand, at 2-3, Dec. 8, 2014, D.E. 4-2.   Plaintiffs argue that the thirty-day removal period under 28 U.S.C. § 1446(b) began

7

on September 12, 2013 because that was when Plaintiff Makwana served Defendant with the Summons and the Complaint.   See id. at 1-2; see also Resnick Cert., at ¶ 3, Dec. 8, 2014, D.E. 4-1.   Plaintiffs assert that paragraph 28 of the Complaint, which is Count Three, provided Defendant adequate notice that "deprivation of a severance payment" formed the basis of the Contract Claims.   See Pls.' Mot. to Remand, at 2.

Second, Plaintiffs maintain that the Court lacks jurisdiction over this action because only state law claims are at issue.   See Pls.' Reply Br., at 3-4, Jan. 12, 2015, D.E. 10.   Plaintiffs argue that ERISA does not govern the Severance Plan because the Plan lacks a "separate and ongoing administrative scheme."   See id. at 3.   More specifically, the Severance Plan requires no continued administration because, upon termination, qualified former employees receive "a one-time, lump sum payment triggered [by the individual's termination]."   Pls.' Mot. to Remand, at 2, Dec. 8, 2014, D.E. 4-2.   For these reasons, Plaintiffs dispute that the Plan Administrator maintains enough discretion to authorize severance benefits.   See id. at 4.

Plaintiffs also seek attorney's fees pursuant to 28 U.S.C. § 1447(c) because they claim that Defendant lacked an "objectively reasonable basis for seeking removal."   Id. at 5.

## 2. DEFENDANT'S OPPOSITION

Medco asserts that neither the Complaint nor the Amended Complaint provided sufficient notice that the action was removable.   See Def.'s Opp. Br., at 7-9, Dec. 22, 2014, D.E. 6.   For instance, Count Two alleges that Defendant breached an "implied contract," created by the company's "guidelines and policies."   See id. at 8-9; see also Compl., at ¶ 21, Aug. 29, 2013, D.E. 6-1, at Ex. A to Affrunti Decl.   Further, Count Three states that the parties executed a "contract of employment," and that Medco allegedly breached that contract by depriving Plaintiff Makwana of "a significant severance package."   See Def.'s Opp. Br., at 9; see also

8

Compl., Aug. 29, 2013, at ¶¶ 25-29, D.E. 6-1, at Ex. A to Affrunti Decl.   In sum, Defendant

maintains the Contract Claims do not reference the Severance Plan, which means that there were

no "grounds for Defendant to reasonably and intelligently infer that [Plaintiffs' Contract Claims

related to] Defendant's ERISA-governed Severance Plan."   Def.'s Opp. Br., at 10, D.E. 6.

 Next, Defendant contends that ERISA controls the Severance Plan because, under the

Plan, the Plan Administrator maintains broad discretion to authorize severance benefits.   See id.

at 13.   Defendant asserts that the Plan Administrator determines the type of severance benefits

offered, who receives the benefits, and when the benefits are paid.   See id. at 16.   The Court,

therefore, can exercise original jurisdiction over this case because Plaintiffs' Contract Claims are

ERISA claims.   See id. at 12-13.   In addition, Defendant argues that the Court may exercise

supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367 because

those claims share core facts with the Contract Claims.   See id. at 16.

 Finally, Defendant opposes Plaintiffs' fee application because they assert that Plaintiff's

vague pleading delayed its ability to remove this case.   See id. at 17-18.

## III.   DISCUSSION

### A.   REMOVAL

 The Court must first determine whether Medco timely removed this action.   In general,

defendants may remove civil cases under either 28 U.S.C. § 1441 or § 1446.   See 28 U.S.C. §§

1441, 1446.   The party seeking removal bears the burden of establishing that removal is proper.

See Rosebud Holding L.L.C. v. Burks, 995 F. Supp. 465, 467 (D.N.J. 1998).   A defendant may

remove an action first brought in state court only if the plaintiff could have filed the complaint

within the court's original jurisdiction.   28 U.S.C. § 1441(b).   Under 28 U.S.C. § 1446(b)(1), a

defendant must remove from state court within thirty days of receiving "a copy of the initial

9

pleading [or] after the service of summons."   Removal statutes, however, must be "strictly construed against removal and all doubts should be resolved in favor of remand."   Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992).   For this reason, 28 U.S.C. § 1447(c) provides that remand to state court is appropriate "for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure."   PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993).

Under the well pleaded complaint rule, the plaintiff is the "master of the complaint and may choose to assert only state law claims, despite the availability of federal remedies."   Burgo v. Volkswagen of Am., 183 F. Supp. 2d 683, 686 (D.N.J. 2001); see also Costa v. Verizon N.J., Inc., 936 F. Supp. 2d 455, 458 (D.N.J. 2013) ("The removability of a legal matter is determined from the plaintiff's pleadings at the time of removal.").   The Third Circuit has clarified that a state claim which is "really one of federal law may be removed to federal court because it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."   Goepel v. Nat'l Postal Mail Handlers Union, a Div. of LIUNA, 36 F.3d 306, 310 (3d Cir. 1994) (internal citations and quotations omitted).

When considering whether a defendant timely removed, the "inquiry begins and ends within the four corners of the pleading. [Therefore, the] inquiry is succinct: whether the document informs the reader, to a substantial degree of specificity, whether all the elements of federal jurisdiction are present."   Vartanian v. Terzian, 960 F. Supp. 58, 60 (D.N.J. 1997) (emphasis in original) (quoting Rowe v. Marder, 750 F. Supp. 718, 721 (W.D. Pa. 1990) aff'd 935 F.2d 1282 (3d Cir. 1991).   That is, removal is proper "only when plaintiff's well-pleaded complaint raises issues of federal law."   Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, (1987).

If, however, the initial pleading does not indicate that a case is removable, then defendants may rely on 28 U.S.C. § 1441(b)(3).   Under 28 U.S.C. § 1441(b)(3), defendants must remove within thirty days of receiving a copy of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."   Id. (emphasis added).   Third Circuit courts broadly interpret the "other paper" provision such that "a wide array of documents, including letter communications between counsel, deposition testimony, stipulations between the parties, answers to interrogatories, and transcripts" satisfy that standard.   Costa, 936 F. Supp. 2d at 465-66; see also Rose v. USAA Cas. Ins. Co., No. 09-6005, 2010 WL 2557484, at *4 (D.N.J. June 23, 2010) (ruling that "other papers" apply to the thirty-day removal period "when they are the result of a voluntary act of the plaintiff which effects a change rendering a case subject to removal by defendant which had not been removable before the change.") (internal quotations and citations omitted).

In McLaughlin v. Jones, No. 14-3430, 2015 WL 404913, at *6 (D.N.J. Jan. 29, 2015), the court denied a motion to remand after concluding that defendant timely removed ERISA-governed claims.   In that case, according to company policy, union members subject to a collective bargaining agreement could file formal employment-related grievances.   See id. at *1-2.   Plaintiff filed a state court complaint on April 2, 2014 alleging that defendant denied him access to the company's employee grievance procedure after improperly terminating him.   See id.   In a reply brief in support of an order to show cause, served on May 5, 2014, plaintiff's counsel asserted, for the first time, that preventing plaintiff from accessing defendant's grievance procedure breached Section 502(a)(1)(B) of ERISA.   See id. at *3, 6.   Defendant, as a result, removed the state action on May 29, 2014, which was after the thirty-day removal period.   See id. at *1-2.

Concluding that the complaint referenced neither ERISA nor the collective bargaining agreement, the court determined that defendant timely removed the state action.  See id. at *2-3, 5.  The court reasoned that the "vague reference to an unidentified dispute resolution process [in plaintiff's complaint] could [not] have conveyed the existence of a federal question to Defendant [.]"  Id. at *5.  Additionally, defendant hired plaintiff as an independent contractor, and independent contractors lacked access to the company's grievance procedure.  See id. at *5-6. Defendant therefore lacked any notice that plaintiff's core claim-i.e., the denial of access to the grievance procedure-implicated ERISA or any other federal law.  See id. at *6.

As in McLaughlin, Medco's removal was timely.  See id.  Contrary to Plaintiffs' argument, the thirty-day removal clock did not begin when it served Defendant with the Summons and the Complaint on September 18, 2013.  See Acknowledgement of Service, at Ex. A, Sept. 18, 2013, D.E. 4-1.  Rather, Plaintiff Makwana's October 13, 2014 deposition triggered the removal period because the Complaint simply did not provide Defendant notice that the state action was removable.  See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996) (holding that "a transcript of the deposition testimony [was] 'other paper [ ]'" under 28 U.S.C. § 1441(b)(3) because it indicated "a voluntary act of the plaintiff").

A careful reading of the Plaintiffs' pleadings does not suggest that their Contract Claims derived from an alleged breach of the Severance Plan.  See Compl., Aug. 29, 2013, at ¶¶ 21-29, D.E. 6-1, at Ex. A to Affrunti Decl.  For example, in Count Two, Plaintiff Makwana alleges that Defendant improperly terminated him in breach of an "implied contract" created by Defendant's corporate "guidelines and procedures," which the Complaint does not specify.  Id. at ¶¶ 21-22. Because the pleading did not identify which corporate policy or procedure created the parties' alleged implied contract, it is totally unclear whether the Severance Plan was at issue.  See id.

Indeed, it would be unreasonable to assume that Count Two relied on the Severance Plan as the implied contract because the Severance Plan was an express agreement between Defendant and eligible employees.   See Severance Plan, at 1, Aug. 3, 2012, D.E. 6-1, Ex. L to Affrunti Decl. The Severance Plan would seem to apply after an employee separated from Defendant, not define the circumstances by which an employee would separate from Defendant.   In any event, Defendant should not have to guess whether the Contract Claims are federal claims.   See Goepel, 36 F.3d at 310 ("[In] the absence of any indication that [plaintiff] intended to invoke federal common law, we conclude that 'on their face' these claims are grounded exclusively on New Jersey common law.") (quotations omitted).

Count Three also lacks the "substantial degree of specificity" necessary to indicate whether "all the elements of federal jurisdiction are present."   Vartanian, 960 F. Supp. at 60. That Count references two different agreements, neither of which is the Severance Plan.   First, Count Three references a "contract of employment" between the parties; and, second this claim mentions an "implied covenant of good faith and fair dealing,"[5] which is "[i]nherent in the contract of employment.   Compl., Aug. 29, 2013, at ¶¶ 25-26, D.E. 6-1, at Ex. A to Affrunti Decl.   Plaintiff Makwana alleges that Defendant "engaged in deception or evasion in the performance [of the] contract."   Id. at ¶ 27.   Specifically, he claims that Defendant "failed to act in good faith in the performance of the contract" by allegedly "fabricating false pretenses to terminate Mr. Makwana's employment, in order to deprive Mr. Makwana of a significant severance package [.]"   Id. at ¶ 28 (emphasis added).   Count Three thus does not indicate that Defendant's improper termination breached the Severance Plan.   A fair reading of Count Three

---

[5] Plaintiffs do not explain how the Severance Plan, which appears to be an express agreement, could constitute an implied covenant.

13

suggests that Plaintiffs' claim that Defendant breached an employment contract and as a result, Plaintiffs suffered damages, including the denial of severance benefits under the Severance Plan. See id. at ¶¶ 24-29.

Having reviewed the record, the Court concludes that Defendant timely removed pursuant to 28 U.S.C. § 1441(b)(3) because this action became removable after Plaintiff Makwana's October 13, 2014 deposition.   See Kalpesh Makwana Dep. Tr., at 149:2-9; 149:10-19; 153:12-21; 158:24-159:6, Oct. 13, 2014, D.E. 6-1, at Ex. K to Affrunti Decl.   Before that date, Plaintiffs refused to identify the specific contract at issue during discovery.   See Pl. Makwana's Resp. to Def.'s First Req. for Production of Docs., Feb. 24, 2014, D.E. 6-1, at Ex. G to Affrunti Decl.   In response to a request for documents concerning Count Three, for instance, Plaintiff Makwana responded that the "breach results in the Plaintiffs' terminations [and] that [neither Plaintiff has] any documents confirming their terminations in their possession."   Id. at 6.   Plaintiff Mitchell, similarly, responded that "Defendant [was] already in possession" of the documents relating to the "implied contract" referenced in Count Three.   See Pl. Miller's Resp. to Def.'s First Req. for Production of Docs., at 6, Feb. 26, 2014, D.E. 6-1, at Ex. G to Affrunti Decl.   Indeed, Plaintiffs produced the Severance Plan only after being ordered to do so by the Superior Court.   See Case Mgmt. Order, at ¶ 7, Aug. 18, 2014, D.E. 6-1, at Ex. J to Affrunti Decl.

Taken together, the Contract Claims in the Complaint did not adequately notify Defendant that its Severance Plan was at issue in this action.[6]   For this reason, removal was

---

[6] By extension, the Amended Complaint, which adds Plaintiff Mitchell as a party to the Contract Claims, and contains nearly identical allegations, also did not trigger the thirty-day removal period.   See Am. Compl., at ¶¶ 21-30, Oct. 16, 2013, D.E. 6-1, at Ex. B to Affrunti Decl.; see also Costa, 936 F. Supp. 2d 455, 467 (reasoning that the thirty-day removal period begins to run when a defendant can "reasonably

timely when Defendant filed the Removal Petition on November 12, 2014 because it was within thirty days of Plaintiff Makwana's deposition.   See, e.g., S.W.S, 72 F.3d at 494.[7]

### B. SUBJECT MATTER JURISDICTION

The Court must next determine whether ERISA governs the Severance Plan, which, in turn, would provide the Court with subject matter jurisdiction in this case.

Section 1331 of Title 28 of the United States Code provides federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."   A case "arises under" federal law if: (i) a well pleaded complaint either sets forth claims based on federal law, or (ii) a federal statute "wholly displaces the state-law cause of

---

and intelligently conclude from the pleadings the presence of federal jurisdiction.") (internal quotations and citations omitted).

[7] Plaintiff mistakenly relies on Costa, 936 F. Supp. 2d at 465-66, to support remand.   See Pls.' Mot. to Remand, at 2-3, Dec. 8, 2014, D.E. 4-2.   In Costa, the court remanded after concluding that defendant untimely removed from the state court because it knew that Section 301 of the federal Labor Management Relations Act ("LMRA") preempted plaintiff's contract claims.   See 936 F. Supp. 2d at 465-67.   There, plaintiff initially filed a CEPA claim against his former employer, and amended his complaint three times.   Id. at 465-67.   More than two years after service of the initial complaint, defendant removed and argued that plaintiff's second amended complaint established that: (i) LMRA governed plaintiff's collective bargaining agreement claims, and (ii) LMRA provided the federal court with original jurisdiction over the state court matter.   See id. at 465-66.   Upon reviewing the record, however, the court disagreed because defendant's brief in opposition to plaintiff's second amended complaint "expressly referenced [plaintiff's] union, the arbitration proceedings before the union . . . and the deposition testimonies of the relevant Labor Relations Manager and EEO Investigator."   Id. at 465.   Thus, the court concluded that defendant's removal was untimely because it knew that LMRA controlled plaintiff's contract claims, and removed too late.   See id. at 465-66.

Unlike the defendant in Costa, Medco lacked sufficient notice that the state action was removable.   Plaintiff's initial and Amended Complaint do not explicitly or implicitly reference the Severance Plan as the contract at issue.   See Compl., Aug. 29, 2013, at ¶¶ 20-29, D.E. 6-1, at Ex. A to Affrunti Decl.; see also Am. Compl., at ¶¶ 21-30, Oct. 16, 2013, D.E. 6-1, at Ex. B to Affrunti Decl. Instead, Count Two references an implied contract created by Medco's "guidelines and polices."   See Compl., at ¶ 21; see also Am. Compl., at ¶ 22. Even worse, Count Three references two different agreements neither of which are the Severance Plan.   See Compl., at ¶¶ 24-29; see also Am. Compl., at ¶¶ 25-30.   The presence of a federal claim simply is not clear from the pleadings.   See McLaughlin, 2015 WL 404913, at *6; see also Burgo, 183 F. Supp. 2d at 686.

action" so that the claims "even if pleaded in terms of state law, [are] in reality based on federal law." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).

Regarding ERISA, the Supreme Court has clarified that Congress "clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." Metro. Life Ins., 481 U.S. at 66. Under § 502(a), "a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. . . [and] may also bring a cause of action for breach of fiduciary duty . . . ." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987).

ERISA broadly preempts "all State laws insofar as they may now or hereafter relate to any employee benefit plan [.]" 29 U.S.C. § 1144(a). ERISA defines an "employee benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services [.]

29 U.S.C. § 1002(1).

ERISA regulates a company's severance plan only if that plan maintains a "uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9 (1987). Moreover, ERISA governs severance plans affording administrators discretion concerning "the circumstances surrounding each claimant's reason for termination" and eligibility for severance benefits. Way v. Ohio Cas. Ins. Co., 346 F. Supp. 2d 711, 717 (D.N.J. 2004). A "one-time,

16

lump-sum payment triggered by a single event requires no administrative scheme," and therefore, is not regulated by ERISA.   Fort Halifax, 482 U.S. at 11; see also Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 789 (3d Cir. 1998) ("We have stated, moreover, that the crucial factor in determining whether a 'plan' has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis.").

In Darlin v. Consol. Rail Corp., for example, the court denied a motion to remand where plaintiff sued defendant for breach of contract under a company severance plan.   93 F. Supp. 2d 599, 601 (E.D. Pa. 2000).   The court found that ERISA regulated the company's severance plan because the plan expressly restricted eligibility to "employees who are terminated (or constructively terminated) without cause —a standard involving the use of subjective discretion by the plan administrator."   Id. (internal quotations omitted).   Likewise, in Way, 346 F. Supp. 2d at 716, the court determined that defendant's "Separation Pay Plan" was an employee benefit plan under ERISA because it provided "various categories of termination, applicable separation payment amounts, eligibility requirements, and intended beneficiaries."

In this case, the Court finds that ERISA governs Medco's Severance Plan.   See id.   The Severance Plan affords the Plan Administrator considerable discretion, including "whether a severance benefit will be awarded under the Plan, and if so, the amount of the severance, as well as any other discretionary authority described in the Plan."   Severance Plan, at 5, Aug. 3, 2012, D.E. 6-1, Ex. L to Affrunti Decl.   The Plan, for instance, excludes all employees terminated for cause, and authorizes benefits solely for employees terminated because of "job elimination, staff reduction, or closing or sale of a Company operation on or after April 3, 2012."   Id. at 1.   It also indicates that approved benefits must cease "by the end of the employee's second taxable year following the year of termination," which means that it is not just limited to a single lump sum

payment.   Id. at 3.   ERISA, therefore, governs the Severance Plan because it sets forth a "set of standard procedures to guide processing of claims and disbursement of benefits."   Fort Halifax, 482 U.S. at 9.

Because ERISA governs the Severance Plan, the Court further determines that ERISA completely preempts the Contract Claims.   See In re U.S. Healthcare, 193 F.3d 151, 160 (3d Cir. 1999) (explaining that complete preemption is a jurisdictional concept that confers "original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint."); see also Darlin, 93 F. Supp. 2d at 601 ("State law claims subject to complete preemption are necessarily federal in character and, as such, are transformed into federal claims.") (internal citations and quotations omitted).

### a.  SUPPLEMENTAL JURISDICTION

Under 28 U.S.C. § 1367(a), district courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   A court's exercise of supplemental jurisdiction "promotes judicial economy, convenience and fairness to litigants."   De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) (internal quotations omitted).   The Third Circuit has clarified that Section 1367 requires that the federal claim have "substance sufficient to confer subject matter jurisdiction . . . derive from a common nucleus of operative fact . . . and [be] such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding."   Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 275 (3d Cir. 2001).   Where the same acts asserted in a claim "violate parallel federal and state laws, the common nucleus of operative facts is obvious."   De Asencio, 342 F.3d at 308 (3d Cir. 2003).

18

The remaining seven claims in the Amended Complaint all relate to Defendant's alleged improper termination of Plaintiffs.   For one, Plaintiffs claim that Defendant committed slander by "publishing to other employees of the company that Plaintiffs were terminated for failing to follow company policy."   Am. Compl., at ¶ 52, Oct. 16, 2013, D.E. 6-1, at Ex. B to Affrunti Decl.   In the NJ LAD claim, Plaintiff Makwana asserts that Medco Defendant failed to accommodate a medical condition "and instead terminated his employment."   Id. at ¶ 41.   In addition, the equitable estoppel claim maintains that Plaintiffs relied on Defendant's company policies "to their detriment, which resulted in [Plaintiffs'] termination of employment."   Id. at ¶ 17.   The exercise of supplemental jurisdiction is therefore proper because the state law claims and the Contract Claims share the same set of core facts.   See Pryzbowski, 245 F.3d at 274-75.

### C. ATTORNEY FEES

Finally, the Court considers Plaintiffs' application for attorney fees.   An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   28 U.S.C. § 1447(c).   Fees are appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal."   Martin v. Franklin Capital Corp., 546 U.S. 132, 141, (2005).   Courts maintain broad discretion to award fees, and may grant fee applications "whether or not the removal was in bad faith." Stephens v. Gentilello, 853 F. Supp. 2d 462, 471 (D.N.J. 2012).

Here, the Court should deny Plaintiffs' fee application because Defendant's removal of this case was objectively reasonable.

### IV.   CONCLUSION

For the reasons stated above, the Undersigned respectfully recommends that the District Court deny Plaintiffs' motion to remand [D.E. 4].

19

The parties have fourteen days to file and serve objections to this Report and

Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 7.1(c)(2).


                                        s/*Michael A. Hammer*_____
                                        **UNITED STATES MAGISTRATE JUDGE**


Date: May 4, 2015